1

2

3

4

5

6

7              UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

8

9

10 JOY SIMMONDS, on behalf of herself and all
others similarly situated,

11            Plaintiffs,                No. C 05-00268 MHP

12   v.                          **MEMORANDUM & ORDER**
                                   **Re: Catholic Healthcare West's Motion to**
13 CATHOLIC HEALTHCARE WEST,            **Dismiss**
ELIZABETH LUCIO, SAN LEANDRO
14 COLLECTION SERVICE, SR2, LLC, SAN
LEANDRO COLLECTION SERVICE, INC.,
15 RAYMOND J. McNAUGHTON, and DOES 1
through 10,
16
           Defendants.
17 _____/

18

19       Plaintiff Joy Simmonds has brought this putative class action to challenge the billing practices of

20 Catholic Healthcare West ("CHW") and the debt collection practices of San Leandro Collection Service

21 ("SLCS"). Against CHW, defendant in the present motion, Simmonds has brought claims of false

22 advertising, violation of the Consumer Legal Remedies Act, breach of contract, and declaratory relief.

23 Simmonds alleges that defendant erroneously billed her for payments she did not owe, thereby misleading

24 her and violating defendant's agreements with plaintiff and her insurance provider. Catholic Healthcare

25 West now moves to dismiss all four claims under Federal Rule of Civil Procedure 12(b)(1) and Federal

26 Rule of Civil Procedure 12(b)(6). The motion was deemed submitted without need for oral argument. For

27 the reasons set forth below, the court rules as follows.

28 BACKGROUND[1]

At all times relevant to this action, Joy Simmonds was party to a health insurance plan offered by Health Net, a health maintenance organization. Catholic Healthcare West ("CHW"), a nonprofit corporation, contracted with Health Net to accept fees set by Health Net for various medical services performed at CHW facilities and not to pursue Health Net's members for additional compensation. CHW publishes a list of the health service plans, including Health Net, with which it contracts and whose members do not have to pay CHW more than the copay amount for approved services.

In or about February 2003, a surgeon recommended that Simmonds undergo a trans occlusion embozation procedure to alleviate pain in plaintiff's leg. The surgeon informed Simmonds that her insurance did not cover the procedure at that time, but that an upcoming policy change would resolve the problem. On March 3, 2002, Simmonds received documentation notifying her that the procedure would be covered if performed between April 4, 2003 and August 2, 2003 at St. Mary's Hospital.

On April 4, 2003, Simmonds underwent the procedure at the approved hospital. The "Conditions of Admission and Treatment" form, which plaintiff signed on the day of the procedure, stated that if a patient's health service plan appears on CHW's list of plans with which they have a contractual relationship, the patient is obligated to pay for any procedure that is not covered by the plan. Grossman Dec., Exh. A. at 4.

On May 13, 2002, Health Net mailed an "Explanation of Benefits" ("EOB") to Simmonds. The EOB stated that the "Billed Amount" for the procedure was $15,441.41, the "Non-Allowed Amount" $13,710.50, and the "Allowed Amount" $1,730.91. The EOB also stated that Health Net had paid $1,580.91 to CHW for the procedure, and that Simmonds's copay obligation to the hospital was $150.00.

On May 22, 2003, Simmonds received the first of three "BALANCE DUE" notices from CHW, requesting the payment of $13,860.50. During May of 2003, CHW employees began calling Simmonds at home, demanding that she pay CHW the amount of $13,860.50. Simmonds explained that she was not responsible for this debt, but CHW employees insisted that she had to pay and threatened to refer her to a collection agency. They told Simmonds that the alleged debt could be billed to a credit card and asked for her credit card number. Plaintiff alleges that at the time of these calls, CHW knew its employees were

2

1   making false and misleading representations likely to confuse plaintiff because CHW had already been paid

2   by Health Net for Simmonds's procedure and CHW's own records reflected that Simmonds only owed

3   CHW $150.00 for her copay.

4        In or about January 2004, CHW assigned Simmonds's purported debt of $13,860.50 to San

5   Leandro Collection Service ("SLCS"), a collection agency.  The complaint alleges that at the time of this

6   referral, CHW knew the debt was invalid since CHW had already been paid by Health Net and since

7   CHW's own records reflected that Simmonds only owed the sum of $150.00 to CHW.

8        On January 27, 2004, SLCS mailed a letter to Simmonds stating in bold that "*****THIS IS A

9   FORMAL DEMAND FOR PAYMENT IN FULL*****" with a "Total Due" of $13,860.50.  The letter

10  notified Simmonds that she could dispute the validity of the debt by mailing a written notice to SLCS within

11  30 days of receiving the letter.  Simmonds sent a timely letter to SLCS disputing the debt's validity,

12  requesting verification of the debt, and asking for an explanation of why CHW was pursuing collection.

13  SLCS never responded to Simmonds's requests.  Through December of 2004, SLCS sent nine additional

14  letters to Simmonds demanding payment in full.

15       Plaintiff brings four causes of action against CHW.  First, plaintiff alleges that CHW engaged in

16  false advertising in violation of section 17500 et. seq. of the California Business & Professions Code.

17  Simmonds alleges that CHW falsely advertised its policies and mislead her and other Health Net members

18  by pursuing them for payments in excess of their contractual obligations.  Plaintiff's second claim for relief is

19  that CHW violated the Consumer Legal Remedies Act ("CLRA") set forth by California Civil Code section

20  1770.  Simmonds alleges that CHW's demand for more than her copay violated its contractual agreement

21  with Health Net and constituted a deceptive representation.  Third, Simmonds alleges a breach of contract

22  on the following two theories: (1) she was a third-party beneficiary to the contract between CHW and

23  Health Net specifying that members will not be pursued for more than their copay, and (2) CHW entered

24  into a direct contractual agreement with plaintiff under the same terms.  Finally, plaintiff asks the court for

25  declaratory relief stating that she has no contractual duty to pay CHW for more than her copay amount.

26       After Simmonds filed and served the complaint in this action, both CHW and SLCS admitted that

27

28                                            3

in fact Simmonds does not owe the balance in question.  CHW now moves to dismiss all four claims based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  CHW's co-defendant SLCS answered plaintiff's complaint.

LEGAL STANDARDS

I.      Rule 12(b)(6)

        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001);  Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

II.     Rule 12 (b)(1)

        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court.  See, e.g., Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004).  The plaintiff bears the burden of establishing the propriety of the court's jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Consequently, a Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction.  Savage, 343 F.3d at 1039, n.2; Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Alternatively, a

United States District Court

For the Northern District of California

4

defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint.  Savage, 343 F.3d at 1039, n.2; Thornhill Publ'g, 594 F.2d at 733.  Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Savage, 343 F.3d at 1039, n.3 (citation omitted).

III.    Standing

Article III requires a litigant to have standing to invoke the power of a federal court.  Allen v. Wright, 468 U.S. 737, 750 (1984).  To establish standing, a plaintiff must allege personal "injury in fact" that is "fairly traceable" to the defendant's allegedly unlawful conduct and "likely" to be redressed by the requested relief.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The "injury in fact" must be an invasion of a legally protected interest which is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical," affecting the plaintiff in a personal and individual way.  Lujan, 504 U.S. at 560-61 (citations and quotations omitted).

The party invoking federal jurisdiction bears the burden of establishing standing.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990).  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss the court presumes that "general allegations embrace those specific facts that are necessary to support the claim."  Lujan, 504 U.S. at 556.

DISCUSSION

I.      False Advertising Claim under California Business & Professions Code Section 17500

        A.      Standing

Plaintiff has standing under California Business & Professions Code section 17500 if she has

5

suffered "injury in fact and has lost money or property as a result of a violation of the [Code]."  Cal. Bus. & Prof. Code § 17535.  Section 17500 states:

> It is unlawful for any person, firm, corporation or association, or any employee thereof . . . to dispose of real or personal property or to perform services, . . . or to make or disseminate or cause to be made or disseminated before the public in this state . . . any statement, concerning that real or personal property or those services . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

Cal. Bus. & Prof. Code § 17500.

Other than the general principle that section 17500 is to be interpreted broadly, no case law defines the parameters of standing under the section.  See Cruz v. PacifiCare Health Sys., Inc., 30 Cal. 4th 303, 341 (2003) (Chin, J., concurring in part and dissenting in part) (interpreting the section as "an extremely broad standing provision").

Although the parties dispute plaintiff's standing under section 17500, a California statute, they employ an Article III standing analysis.  Def.'s Mot. at 6; Pl.'s Opp'n at 4-5.  The statutory argument and the constitutional argument conflate what are in fact two distinct jurisdictional issues.  Where a court is presented with two jurisdictional questions, it may choose which one to answer first.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 115 (1998) (Stevens, J., concurring).  Section 17500 requires "injury in fact" *and* the loss of money or property, and thus poses the more restrictive of the two jurisdictional inquiries.  Cal. Bus. & Prof. Code § 17500.  The court thus proceeds with this inquiry first.

Simmonds attempts to create standing under section 17500 by alleging that she "has suffered injury in fact and has lost money or property as a direct and proximate result of CHW's advertising and conduct."  First Am. Compl. ¶ 91.  However, the complaint does not allege that she actually paid more than her copay or otherwise incurred economic damages.  At no point does Simmonds aver more than a repetition of the legal standard.  It is a long-settled principle that standing cannot be "inferred argumentatively from averments in the pleadings."  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990).  The burden is on Simmonds to clearly allege facts demonstrating that she is "a proper party to invoke judicial resolution of the dispute."  Id.  Simmonds's conclusory allegations are not sufficient to meet her burden to show injury in fact and loss of money or property that can fulfill section 17500's requirements for standing.  Even under

6

**United States District Court**
For the Northern District of California

1    the constitutional standard, without the additional requirement that plaintiff plead the loss of money or

2    property, plaintiff would not have standing under Article III, because her general allegations fail to specify

3    any "concrete and particularized" injury.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561

4    (1992).

5         Simmonds argues that at a minimum, her attorney's fees constitute actual injury resulting from

6    CHW's conduct.  To make this argument, Simmonds must show that attorney's fees will actually be

7    recoverable, such that the injury she asserts could be redressed by this court.  The general rule is that each

8    party must pay her own attorney's fees in the absence of a specific statutory grant.  Ruckelshaus v. Sierra

9    Club, 463 U.S. 680, 701, n.11 (1983) (noting that "[i]n the absence of statute, the general rule in America

10   is that each party must pay the fees of his own counsel").  Section 17500 does not provide for the recovery

11   of attorney's fees.  Cal. Bus. & Prof. Code § 17500.  Therefore, in the absence of any other exception to

12   the general rule, plaintiff cannot recover attorney's fees. Ruckelshaus, 463 U.S. at 701.  See also Cal.

13   Code Civ. Proc. § 1021 (maintaining that in the absence of some special agreement, statutory provision or

14   exceptional circumstances, attorney's fees are to be paid by the party employing the attorney).

15        Plaintiff argues, however, that attorney's fees can be recovered under the "tort of another" doctrine.

16   "A person who through the tort of another has been required to act in protection of [her] interests by

17   bringing or defending an action against a third person is entitled to recover compensation for the reasonably

18   necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred."  Prentice v. N.

19   Am. Title Guar. Corp., 59 Cal. 2d 618, 620 (1963).  Based on this rule, Simmonds claims that the

20   attorney's fees paid in connection with prosecuting her claims against the collection agency (SLCS) are

21   recoverable as damages from CHW.  Nearly all the cases applying the Prentice rule, however, involve "a

22   clear violation of a traditional tort duty between the tortfeasor required to pay the attorney fees and the

23   person seeking compensation."  David v. Hermann, 129 C.A.4th 672, 688-89 (2005) (quoting Sooy v.

24   Peter, 220 Cal. App. 3d 1305, 1310 (1990)).  Because the doctrine does not create an independent cause

25   of action, but merely provides eligibility for damages once an underlying tort has been proven, this court

26   cannot employ the doctrine if Simmonds has not yet pleaded a complete tort (false advertising or another

27

28                                                    7

cause of action) against the tortfeasor from whom she seeks attorney's fees (CHW).  See Prentice, 59 Cal. 2d at 620.  A Prentice theory of attorney's fees cannot be bootstrapped into completing an otherwise insufficient tort allegation.

Although Simmonds failed to make the argument, a plaintiff may ask the court for attorney's fees under California Code of Civil Procedure section 1021.5.  See Walker v. Countrywide Home Loans, Inc., 98 Cal.App.4th 1158, 1179 (2002).  Section 1021.5 provides:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit . . . has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of . . . enforcement    . . . are such as to make the award appropriate . . . .

Cal. Code Civ. Proc. § 1021.5.

The terms of this statute, however, do not automatically grant Simmonds any attorney's fees.  Since plaintiff has not yet fulfilled even the initial statutory requirement of fully alleging and prevailing upon a section 17500 action, she cannot claim a section 1021.5 award.  In the absence of an underlying successful action, there is no enforcement of plaintiff's rights, conferred benefits, or burdens of enforcement as required by the statute. Similar to the problem with granting attorney's fees under the tort of another doctrine in the absence of a proven tort, granting plaintiff attorney's fees on these facts would be putting the proverbial cart before the horse.  On these grounds, a claim to section 17500 damages cannot rest on a premature claim of attorney's fees under section 1021.5.

As currently written, plaintiff's complaint simply pleads grounds for attorney's fees against SLCS, arising under California Civil Code section 1788.30 and 16 U.S.C. section 1692a.  See First Am. Compl. ¶ 3.  Because the tort of another doctrine is inapplicable, plaintiff has given this court no basis on which to find that she can amend her complaint to claim attorney's fees against CHW.  Plaintiff has not alleged injury in fact under section 17500 and therefore does not have standing to bring a claim under the statute.  The court therefore dismisses plaintiff's false advertising claim.  Leave to amend will not be granted, as the facts alleged in this case and the arguments of the parties do not demonstrate any grounds for alleging injury or damages against CHW.

II.     Consumer Legal Remedies Act (CLRA)

8

United States District Court

For the Northern District of California

A.      Standing

The Consumer Legal Remedies Act (CLRA) prohibits the deceptive representation of goods, transactions, or services through advertising, false or misleading statements, or any other representations. See Cal. Civ. Code § 1770(a)(4)-(14).  Plaintiff has standing under the CLRA if she has suffered "any damage as a result of the use or employment of a method, act or practice declared to be unlawful by Section 1770."  Cal. Civ. Code § 1780(a).  Among other things, plaintiff alleges that CHW violated the CLRA by deceptive representation of services.  CHW had contractually agreed with Health Net not to pursue its patients beyond their copay, but allegedly billed Simmonds for a debt for which she was not responsible.  First Am. Compl. ¶¶ 77-80.

Relief under the CLRA, however, is not automatic upon unlawful conduct.  It requires the  plaintiff to suffer damage.  Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th 746, 754 (2003).  Just as Simmonds failed to demonstrate an injury in fact to acquire standing under section 17500, here again she has yet to argue or allege any damage beyond attorney's fees.  Plaintiff merely alleges that CHW's unlawful conduct presents a "threat of irreparable harm."  First Am. Compl. ¶ 83.  The alleged "threat of irreparable harm" from CHW is purely speculative, lacking any concrete allegations to substantiate the threat.  Without any specific present damage as a result of CHW's conduct, plaintiff does not have standing under the CLRA.

With regard to plaintiff's request for the consideration of attorney's fees as actual injury, the same reasoning applies as for section 17500.  Because Simmonds has failed to allege any injury or establish standing under the CLRA, she has no recourse for such fees under the statute.  As discussed, plaintiff's argument for claiming attorney's fees against CHW based on the "tort of another" doctrine is inapplicable in the absence of a freestanding tort.  See David v. Hermann, 129 Cal. App.4th at 688-89 (2005).  Simmonds's speculative claim that she may obtain attorney's fees if her torts against CHW are proven is insufficient to constitute "concrete" injury: a premise required for bringing those torts in the first instance.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).  This court grants defendant's motion to dismiss the CLRA claim without leave to amend, as there are no indications that the legal flaws in plaintiff's pleading can be cured.

United States District Court

For the Northern District of California

III.    Breach of Contract Claim

    A.    Third-Party Beneficiary

    California Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him [or her] at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. To qualify as a third-party beneficiary, a plaintiff must plead a contract which was made "expressly for his benefit and one in which it clearly appears that he was a beneficiary." California Emergency Physicians Med. Group v. PacifiCare of California, 111 Cal. App. 4th 1127, 1138 (2005). As used in the statute and case law, "'expressly' means in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." Schauer v. Mandarin Gems of Cal., Inc., 125 Cal. App. 4th 949, 958 (2005) (citations and quotations omitted).

    The contract between St. Mary's and Health Net was not made expressly for Simmonds's benefit. It specifies that "nothing contained in this Agreement is intended to create, nor shall be construed to create, any right in any third party, including but not limited to HEALTH NET Members, nor shall any third party have any right to enforce the terms of this Agreement." Bennett Dec., Exh. A at Article XV, Section 15.02. Where contracting parties have so explicitly disclaimed an intention to create third-party beneficiaries, the disclaimer is given effect. Ratcliff Architects v. Vanir Constr. Management, Inc., 88 Cal. App. 4th 595, 603-604 (2001). Simmonds alleges that the agreement implies that she does have third-party benefits: "the obligations set forth in Sections 3.07, 3.08, and 3.09 . . . shall be construed for the benefit of Members . . . ." Bennett Dec., Exh. A at Article III, Section 3.10. However, given the same document's explicit disclaimer of any intention to create third-party beneficiaries, it is not at all clear, unmistakeable, or definite that Simmonds and other Health Net Members were intended to be third-party beneficiaries. Id. at Article XV, Section 15.02. Even if a contract references a third party and was entered into with that party in mind, it does not confer any enforceable third-party rights to that party. Orff v. U.S., 358 F.3d 1137, 1147 (9th Cir. 2004). In the absence of any showing that Simmonds was expressly made a third-party beneficiary, the court dismisses her breach of contract claim.

    B.    Direct Contract With Health Net

    Simmonds alternatively bases her breach of contract claim on a direct contract she allegedly made with Health Net on the day of her procedure, April 4, 2003. Plaintiff alleges that within this contract, CHW

10

United States District Court
For the Northern District of California

1   promised not to seek payment from Simmonds beyond her copay obligation.  First Am. Compl. ¶¶ 13, 72.

2   According to plaintiff, CHW violated the terms of this contract by later pursuing Simmonds for additional

3   fees.  Id. ¶ 74.  Defendant has provided CHW's "Conditions of Admission and Treatment," a standard

4   agreement form that defendant presumes is the direct contract to which Simmonds refers.  See Grossman

5   Dec., Exh. A; Def.'s Rep. at 6.  Plaintiff has not provided the contract she referred to in the complaint, or

6   any other contract to this court.  First Am. Compl. ¶¶ 13, 72.  Because this motion was deemed submitted

7   without need for oral argument, and because defendant submitted the form with its reply, plaintiff has not

8   had the opportunity to respond to defendant's assertion that the contract her complaint refers to is in fact

9   CHW's standard agreement form.

10          It is a general rule that a court may not consider extrinsic evidence outside the pleadings for the

11  purposes of a motion to dismiss.  If a court does rely on extrinsic facts in ruling on a 12(b)(6) motion,

12  however, it must treat the motion as one for summary judgment.  See Fed. R. Civ. P. 12(b).  An exception

13  to this rule allows a court to consider documents whose authenticity cannot be questioned and on which

14  plaintiff's complaint "necessarily relies."  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir.

15  2001).  Documents appropriate for inclusion through this exception must be integral to the plaintiff's

16  complaint and dispositive in the dispute, thus guarding against a plaintiff who fails to incorporate them by

17  reference in the complaint as a means of avoiding Rule 12(b)(6) dismissal.  See Parrino v. FHP, 146 F.3d

18  699, 706 (9th Cir. 1998).  See also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192,

19  1196 (3rd Cir. 1993) (holding that a court may consider an undisputedly authentic document that a

20  defendant attaches as an exhibit to a motion to dismiss if it is dispositive of plaintiff's claims).  "The rationale

21  underlying this exception is that the primary problem raised by looking to documents outside the

22  complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice . . . and has relied

23  upon these documents in framing the complaint."  In Re Burlington N. Factory Secs. Litig., 114 F.3d 1410,

24  1426 (3rd Cir. 1997) (admitting an annual report containing specific data to which allegations in the

25  complaint referred).

26          Plaintiff's complaint necessarily relies on a contract between her and CHW, allowing this court to

27  consider the contract.  See First Am. Compl. ¶¶ 13, 72; Lee v. City of Los Angeles, 250 F.3d 668, 688-

28  89 (9th Cir. 2001).  Plaintiff's reference to a direct contract in the complaint demonstrates her actual notice

**United States District Court**
For the Northern District of California

1   of such a document and its unchallenged authenticity.  First Am. Compl. ¶¶ 13, 72.  The substance of this

2   contract is dispositive of whether Simmonds has a valid breach of contract claim, even more so since her

3   third-party beneficiary basis is unfounded.  This court is therefore justified in considering it outside the

4   pleadings.

5          Defendant asserts that CHW's "Conditions of Admission and Treatment" form is the contract relied

6   on in plaintiff's complaint.  Def.'s Rep. at 6.  If the form agreement provided by defendant is indeed the

7   contract to which plaintiff refers, plaintiff cannot assert breach of contract as a matter of law.  The

8   document merely asserts that patients without hospital-approved health insurance are liable to pay for all

9   services rendered to them.  Grossman Dec., Exh. A at 3.  It does not contain any affirmative promises for

10  its insured patrons, rather, the only special attention the contract gives to Health Net members like

11  Simmonds is the unqualified responsibility to pay for any procedure not covered by the insurance plan.  Id.

12  at 4.  CHW's assertion of these billing rights in no way promises that Health Net members would not be

13  charged beyond copay obligations.  Because plaintiff does not have any rights to avoid excessive payment

14  under the contract, this court dismisses her breach of contract claim.

15         Plaintiff has not had the opportunity to respond to defendant's assertion that the form agreement is

16  the only contract between the parties, but the facts of the case lead this court to believe that plaintiff has not

17  signed any separate contract with CHW.  Therefore, the court dismisses the cause of action for breach of

18  contract on the premise that the standard form agreement is the same contract to which she refers.  If in fact

19  plaintiff's complaint relies on some other direct contract between CHW and Simmonds, then plaintiff may

20  seek leave to amend to incorporate the contract and, most importantly, attach a copy of that contract to her

21  amended complaint.

22

23  IV.    Declaratory Relief

24         Under federal and California law, an action for declaratory judgment can only be ruled on if there is

25  an actual controversy between the parties.  See 28 U.S.C. § 2201(a); Cal. Civ. Proc. Code § 1060; Lewis

26  v. Continental Bank Corp., 494 U.S. 472, 477 (1990).  Article III denies federal courts the power "to

27  decide questions that cannot affect the rights of litigants in the case before them . . . and confines them to

28  resolving real and substantial controvers [ies] admitting of specific relief . . . ."  North Carolina v. Rice, 404

1   U.S. 244, 246 (1971).

2         Here, Simmonds asks the court for declaratory relief stating that she "has no contractual duty to

3   compensate CHW for any amount over and above [her] copay . . . ."  First Am. Compl. ¶ 68(2).

4   Although Simmonds was once the target of CHW's erroneous billing, to sustain a court's jurisdiction, "it is

5   not enough that a dispute was very much alive when suit was filed . . . ."  <u>Deakins v. Monaghan</u>, 484 U.S.

6   193, 199 (1988).  Since CHW has admitted that the pursuit of Simmonds's debt was improper and

7   erroneous, plaintiff's reason for seeking declaratory relief is no longer relevant.  First Am. Compl. ¶ 39;

8   Def.'s Mot. at 13; Def.'s Rep. at 7.  Because CHW is already estopped from demanding more than the

9   copayment from Simmonds, declaratory relief is improper.

10        In the alternative, Simmonds alleges that a declaratory judgment is appropriate because there is a

11  strong likelihood that CHW's conduct will recur, either with respect to Simmonds or other similarly situated

12  customers.  Courts have held that declaratory judgment is not warranted when "[t]here is no more than a

13  conjecture or supposition . . . that at some time in the future a controversy may arise . . . The controversy

14  must be justiciable, as distinguished from a difference or dispute of a hypothetical or abstract character, and

15  it must be definite, concrete and of a character which admits of specific and conclusive relief by judgment."

16  <u>Aetna Life Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227, 242 (1937).  <u>See</u> <u>Campbell v. Blodgett</u>,

17  978 F.2d 1502, 1518 (9th Cir. 1992);

18  <u>Simon v. Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26, 57 (1976).  Courts are not authorized to entertain

19  declaratory relief for claims based upon a hypothetical set of facts.  <u>See</u> <u>Lewis v. Continental Bank Corp.</u>,

20  494 U.S. 472, 477 (1990) (citations and quotations omitted).  Simmonds alleges no more than the

21  insufficient conjecture of a "strong likelihood" of recurrence, without any concrete averments in support of

22  this likelihood.  No facts in the complaint indicate that Simmonds's case was more than a singular billing

23  error, as opposed to a widespread system of overbilling CHW patients.  On the current allegations, she

24  would no more be entitled to class certification than declaratory relief.

25        Once the alleged unlawful conduct has ceased, the claim for relief is moot unless plaintiff has shown

26  either a "demonstrated probability or a reasonable expectation" that the conduct will recur.  <u>See</u> <u>Demery v.</u>

27  <u>Arpaio</u>, 378 F.3d 1020, 1027 (9th Cir. 2004).  Because Simmonds has failed to allege further facts

28  showing any likelihood that CHW's conduct will continue with a class of similarly situated customers,

13

1  plaintiff has given this court no other choice but to dismiss her claim for declaratory relief without leave to

2  amend.

3

4  CONCLUSION

5      Based on the foregoing, defendant's motion to dismiss plaintiff's claims against CHW for false

6  advertising, violation of the Consumer Legal Remedies Act, and declaratory relief are GRANTED WITH

7  PREJUDICE.  Defendant's motion to dismiss plaintiff's claim for breach of contract is GRANTED

8  WITHOUT PREJUDICE as described herein.

9

10      IT IS SO ORDERED.

11

12  Dated:  July 5, 2005

13                                                  MARILYN HALL PATEL
                                                    United States District Court Judge
14                                                  Northern District of California

15

16

17                                      ENDNOTES

18

19  1. All facts herein have been taken from the plaintiff's First Amended Complaint, unless otherwise noted.

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

14